Derik N. Lewis, SBN 219981
**VANTIS LAW FIRM, P.C.**
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656
Telephone: (949) 216-0935
Facsimile: (949) 296-0935

Attorney for Debtors
MATTHEW JASON WHITMAN
CARLA MARIA WHITMAN

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In Re<br><br>MATTHEW JASON WHITMAN AND CARLA MARIA WHITMAN,<br><br>*Debtors*. | Case No. 8:15-BK-12147-ES<br><br>Chapter: 7<br><br>THE HONORABLE ERITHE A. SMITH<br><br>**DEBTORS' OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) APPROVING OVERBID PROCEDURES; AND (3) APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASERS PURSUANT TO 11 U.S.C. § 363(m); DECLARATION IN SUPPORT THEREOF**<br><br>**DATE: JULY 21, 2016**<br>**TIME: 10:30 a.m.**<br>**PLACE: COURTROOM 5A**<br>**411 West Fourth Street**<br>**Santa Ana, CA 92701-4593** |

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION ..... 1

II. TRUSTEE FAILED TO PROPERLY SERVE ALL CREDITORS ..... 2

III. TRUSTEE FAILED TO REBUT THE PRESUMPTION OF IMPROPRIETY OF HIS CARVE-OUT AGREEMENT ..... 3

A. TRUSTEE FAILED TO FULFILL HIS DUTIES AS CHAPTER 7 TRUSTEE ..... 3

B. TRUSTEE FAILED TO FULLY DISCLOSE THE TERMS OF THE CARVE-OUT AGREEMENT ..... 6

C. TRUSTEE FAILED TO PROVE A MEANINGFUL DISTRIBUTION TO UNSECURED CREDITORS ..... 8

IV. TRUSTEE CAUSED AN UNDUE DELAY IN THE RESOLUTION OF THIS CASE ..... 11

V. TRUSTEE IS NOT ABLE TO SELL THE PROPERTY FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES IN THIS MATTER ..... 11

A. Silence is Not “Consent” Under 363(f)(2) ..... 11

B. Section 363(f)(5) is Not Applicable in the Case at Hand ..... 12

C. MCM Does Not have the Right to Foreclose on the Property ..... 16

D. Failure to Properly Serve All Creditors ..... 17

VI. DEBTORS’ EXEMPTION MUST BE PAID ..... 17

VII. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (B.A.P. 9th Cir. 2008) ....13, 14, 15, 16

*In re Arch Hosp., Inc.*, 530 B.R. 588 (Bankr. W.D.N.Y. 2015) ....12

*In re Canonigo*, 276 B.R. 257 (Bankr. N.D. Cal. 2002) ....16

*In re Decelis*, 349 B.R. 465 (Bankr.E.D.Va.2006)....12

*In re E. Airport Dev., LLC*, 443 B.R. 823 (B.A.P. 9th Cir. 2011) ....11

*In re Feinstein Family P'ship*, 247 B.R. 502 (Bankr. M.D. Fla. 2000) ....10

*In re Hyman*, 967 F.2d 1316 (9th Cir. 1992) ....18

*In re KVN Corp., Inc.*, 514 B.R. 1 (B.A.P. 9th Cir. 2014) ....passim

*In re Roberts*, 249 B.R. 152 (Bankr. W.D.Mich. 2000). ....11, 12

*In re Scoggins*, 517 B.R. 206 (Bankr. E.D. Cal. 2014)....passim

*In re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821 (N.D. Ill. 1993)....13

*In re Wilson*, 494 B.R. 502 (Bankr. C.D. Cal. 2013) ....18

*Owen v. Owen*, 500 U.S. 305, 306, 111 S.Ct. 1833, 1834, 114 L.Ed.2d 350 (1991)....18

*Takeout Taxi Holdings, Inc.*, 307 B.R. 525 (Bankr. E.D. Va. 2004)....12

**Statutes**

11 U.S.C. § 1129(b)....15

11 U.S.C. § 363(b)....1

11 U.S.C. § 363(f)....1, 14

11 U.S.C. § 363(f)(2) .......... 11, 12

11 U.S.C. § 363(f)(3) .......... 15, 16

11 U.S.C. § 363(f)(5) .......... passim

11 U.S.C. § 704(a)(9) .......... 4

12 CFR § 1026.23 .......... 14

28 U.S.C. § 586 .......... 8, 9

California Code of Civil Procedure § 1265.210 et seq .......... 14

California Revenue and Taxation Code § 3700.5 et seq. .......... 14

**Other Authorities**

*U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees* (2012) .......... passim

**Rules**

Fed. R. Bankr. P. 6004(c) .......... 2

Fed. R. Bankr. P. 7004(h) .......... 2

Fed. R. Bankr. P. 9014 .......... 2

**Treatises**

*Cal. Prac. Guide Bankruptcy Ch. 14(I)-D* .......... 15

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE CHAPTER 7 TRUSTEE JEFFREY I. GOLDEN, AND ALL OTHER INTERESTED PARTIES:**

Matthew Jason Whitman and Carla Maria Whitman (***"Debtors"***), debtors in the above referenced case, hereby submit this Opposition (the ***"Opposition"***) to the Chapter 7 Trustee's Motion for Order: (1) Authorizing the Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; and (3) Approving Buyer, Successful Bidder, and Back-Up Bidder as Good-Faith Purchasers Pursuant to 11 U.S.C. § 363(m) (the ***"Motion"***) with respect to the real property located at 36 East Mahi Pua Place, Lahaina, Hawaii 96761, Tax Map Key Number 4-4-018-011-0000 (the ***"Property"***). In support of the Opposition, Debtors submit the following memorandum of points and authorities and the Declaration of Derik N. Lewis (the ***"Lewis Decl."***). Pursuant to LBR 9013-1, any reply to this Opposition must be filed with the court and served on the responding party not later than 7 days prior to the hearing on this Motion.

## I. INTRODUCTION

Pursuant to the Motion, Trustee is proposing to sell the vastly over-encumbered Property to the senior mortgage holder, Ventures Trust 2013-I-H-R by MCM Capital Partners, its trustee (***"MCM"***), for a partial credit bid in an amount less than MCM's secured lien along with a "carve-out" paid to the Estate in an amount which appears to still be uncertain.[1] After over a year of discussions and negotiations,[2] Trustee and MCM have arrived at an agreement whereby unsecured creditors will receive a distribution equal to 0.23% (less the ¼ of 1%) of the current amount listed in the Claims Register for this case.[3] It also appears that 83% of the total carve-out will be used to

[1] Trustee does not attach the actual carve-out agreement, but, rather, generalizes that the carve-out amount could be either $70,000 or $55,000 depending on the success of Trustee's "free and clear" arguments, the over-bid process and MCM's success in negotiating releases with junior lienholders in a yet-to-be-determined process which apparently will occur outside this court's oversight. (Motion, 1:18-23; 2:1-2).

[2] Trustee filed his Withdrawal of Trustee's Report of No Assets on June 17, 2015 (Docket #13), presumably in response to MCM's offer to enter into negotiations for the yet-to-be disclosed carve-out agreement.

[3] Trustee lists only $11,877.77 to be paid to unsecured creditors. (Motion 9:21-22). The total listed in the

pay items other than unsecured creditor claims such as Trustee fees, legal fees, accounting fees and Debtor's claimed exemption.[4] Trustee is proposing to sell the Property (a vacant residential home) "free and clear" of all secured lienholders to MCM on the above terms without any marketing and without listing the home for sale on the MLS. (See, generally, Motion).

The year-long undue delay between Trustee and MCM has resulted in direct harm to Debtors by exposing them to ongoing, non-dischargeable, post-petition homeowner association dues, fees and fines. (Lewis Decl., ¶ 4). From and after the meeting of creditors, the non-dischargeable homeowner association dues have grown by $19,016.08. *Id.* To be clear, this is not the total amount due and it is not the total post-petition accrual, this is ***just the amount that has accrued since Trustee filed his Report of No Assets on June 12, 2015***, which is now added to Debtors' post-petition, non dischargeable homeowner association dues. *Id.*

## II. TRUSTEE FAILED TO PROPERLY SERVE ALL CREDITORS

As an initial matter, Trustee failed to properly serve all creditors and the Motion should be denied. A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. (Fed. R. Bankr. P. 6004(c)). Such a motion shall be served in the manner provided for service of a summons and complaint by Rule 7004 and within the time determined under Rule 9006(d). (Fed. R. Bankr. P. 9014). Rule 7004(h) requires service upon an insured depository institution to be made by certified mail addressed to an officer of the institution.

Both E*Trade Bank and Bank of America are creditors in Debtors' bankruptcy and they both hold secured interests in the Property. (Motion 3: 22; 4:7). Additionally, both of these creditors are "depository institutions" as defined in section 3 of the Federal Deposit Insurance Act because their deposits are insured by the FDIC. (See the FDIC Institution Directory at https://www.fdic.gov/bank/statistical/). Trustee was required to serve both these creditors by

claims register is $5,423,029.46 (and any secured claims listed will become unsecured if Trustee is successful with its arguments herein).

[4] With a total potential carve-out of $70,000, Trustee is showing only $11,877.77 being paid to unsecured creditors in the Motion (there is no indication of what occurs if the carve-out is reduced to $55,000). (Motion 9:19-23).

certified mail to an officer. (Fed. R. Bankr. P. 7004(h)). Nothing in the proof of service attached to the Motion indicates that this was properly completed. Service of the Motion is defective.

## III.   TRUSTEE FAILED TO REBUT THE PRESUMPTION OF IMPROPRIETY OF HIS CARVE-OUT AGREEMENT

Trustee correctly points out that this type of "carve-out" in the sale of a fully encumbered asset is strongly disfavored by the courts and carries a *presumption of impropriety* based upon a history of abuses. *See, In re KVN Corp., Inc.*, 514 B.R. 1, 5 (B.A.P. 9th Cir. 2014). The presumption of impropriety can be rebutted by the Trustee by proving that: (1) the trustee fulfilled his or her basic duties, (2) the terms of the carve-out agreement have been fully disclosed to the bankruptcy court, and (3) there is a meaningful distribution to unsecured creditors. *Id.* at 8; *See also, In re Scoggins*, 517 B.R. 206, 222 (Bankr. E.D. Cal. 2014). The Trustee has the burden of proof on all three elements to overcome the presumption of impropriety. *Id.*

As will be shown, Trustee has failed to rebut the presumption on all three elements identified above, specifically: (1) Trustee failed to fulfill his duties as Chapter 7 trustee, (2) Trustee failed to fully disclose the terms of the carve-out agreement to the bankruptcy court, and (3) Trustee failed to prove a meaningful distribution to unsecured creditors. Failure of any one item is sufficient to reject the carve-out. *Id.* In the case at hand, Trustee is not able to rebut the presumption of impropriety and the Motion must be denied.

### A.   TRUSTEE FAILED TO FULFILL HIS DUTIES AS CHAPTER 7 TRUSTEE

The Trustee's basic duties are set forth in the U.S. Department of Justice Handbook for Chapter 7 Trustees (the ***"Trustee Handbook"***). *See U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees* (2012) ("This Handbook is intended to establish or clarify the views of the United States Trustee Program (Program) on the duties owed by a Chapter 7 trustee to the debtors, creditors, other parties in interest, and the United States Trustee." […] "The trustee is accountable for all duties set forth in this Handbook.").

An important milestone in the process of Chapter 7 bankruptcy case is the obligation of the Trustee to file a Report of No Distribution. (Trustee Handbook 4-3, referred to therein as a no distribution report, or ***"NDR"***). The NDR is only filed after conclusion of the meeting of creditors and only if the trustee determines that the case is a no-asset case. *Id.*; 11 U.S.C. § 704(a)(9). The purpose of the NDR is to close administration of the case. *Id.* As stated in the Trustee Handbook:

> The NDR certifies that the trustee has reviewed the schedules, investigated the facts, and determined that ***there are no assets to liquidate for the benefit of creditors***. It also certifies that the trustee has examined the debtor's claimed exemptions and concluded that there is no purpose served to object to their allowance, and that all security interests and liens against non-exempt property are properly documented, perfected, and not subject to attack as preferences or otherwise voidable.

Trustee Handbook 4-3 (emphasis added).

A Chapter 7 trustee has up to 60 days after the meeting of creditors to file the NDR. *Id.* In the case at hand, Trustee filed his NDR on June 12, 2015 which was just two days after the meeting of creditors (See Docket # 12 and Docket Report). Trustee *correctly* assumed that the Property had absolutely no value to the estate and Trustee should have immediately abandoned the same as required by the Trustee Handbook. However, five days later, Trustee withdrew his NDR presumably based upon contact from a desperate senior mortgage holder who was having extreme difficulty with its faulty judicial foreclosure action under Hawaii state law. *Id.* Between June 12, 2015 and June 15, 2015, Trustee decided, counter to the "certification" in the NDR, that he should attack the liens on the Hawaii Property for the benefit of MCM. Either Trustee failed to properly complete the investigation and evaluation of the assets prior to filing his NDR two days after the meetings of creditors or he was significantly inattentive in that investigation. In either event, without malice, Trustee failed to perform the basic duty in the Trustee Handbook to conduct an investigation regarding the assets of the estate, and he was forced to take corrective action by filing a withdrawal of his NDR.

Debtors concede that this is a highly unusual situation and that it seemed obvious at the time of the meeting of creditors that there was absolutely no value whatsoever in the property of the

estate. However, given the timing shown above, it is now clear that Trustee did, in fact, fail to complete some very basic duties prior to and immediately following his filing of the NDR:

- Trustee took no action to exercise dominion over the Property, failed to physically secure the Residence, and failed to "*obtain control over the property, including changing the locks*." *See* Trustee Handbook 4-6.

- Trustee failed to conduct an inspection of the Property, never asked for keys, never demanded possession, and did not take an inventory of the Property or any assets therein. *See* Trustee Handbook 4-2, 4-3, 4-6, 4-7.

- Trustee failed to conduct a valuation of the Property (Trustee has not provided or attached any appraisal or other valuation of the Property to date). *See* Trustee Handbook 4-5.

- Trustee failed to "immediately take all other steps … to preserve the assets." *See* Trustee Handbook 4-6.

- Prior to filing his Report of No Distribution, Trustee failed to confirm the "amount, validity and perfection of purported security interests against such property." *See* Trustee Handbook 4-5.

- Trustee did not insure the Property or "immediately notify secured lien holders" so they could insure the property and protect the asset. *See* Trustee Handbook 4-6.

- Trustee failed to make a determination whether the Property was a valuable asset such that a sale would generate a meaningful distribution to unsecured creditors and instead Trustee filed his Report of No Distribution. *See* Trustee Handbook 4-3.

- Prior to filing his Report of No Distribution, Trustee failed to "immediately abandon the asset and contact the secured creditor immediately so it can protect its own interest in the property." *See* Trustee Handbook 4-7.

- Having filed his Report of No Distribution and knowing that the Property was "fully encumbered," Trustee failed to "immediately abandon" the over-encumbered Property as required. *See* Trustee Handbook 4-3. That failure has led to a delay in the resolution of the case by more than a year.

See Lewis Decl., ¶ 2.

Section 4.A. of the Trustee Handbook also makes it clear that "[a] trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, ***or unduly delay the resolution of the case***." (Trustee Handbook,

Section 4.A.) (emphasis added). Even if liquidation will benefit the creditors, Trustee still must abandon the asset if the liquidation process will unduly delay the resolution of the case. *Id.* This case has been open for over a year waiting for Trustee to finalize a deal with MCM. (Lewis Decl., ¶ 3). That process has produced an undue delay which has harmed Debtors by exposing them to ongoing, non-dischargeable, post-petition homeowner association dues, fees and fines. (Lewis Decl., ¶ 4). From and after the meeting of creditors, the non-dischargeable homeowner association dues have grown by $19,016.08. *Id.* To be clear, this is not the total amount due and it is not the total post-petition accrual, this is *just the amount that has accrued since Trustee filed his Report of No Assets on June 12, 2015*, which is now added to Debtors' post-petition, non dischargeable homeowner association dues. *Id.*

Based upon the failures set forth above, Trustee has failed to overcome the presumption of impropriety and the Motion should be denied.

### B. TRUSTEE FAILED TO FULLY DISCLOSE THE TERMS OF THE CARVE-OUT AGREEMENT

Trustee failed to provide a copy of the carve-out agreement despite Debtor's prior requests and despite his obligation to fully disclose the terms. *KVN*, supra, 514 B.R. at 8; (Lewis Decl., ¶ 5). Trustee provides little more than a summary of terms in the Motion which does not meet the standard of "full disclosure." (Motion 3:4-13). Further, as set forth above, Trustee failed to properly serve his Motion on all creditors which is also a failure of full disclosure. Finally, despite repeated requests from Debtor, Trustee has not provided any information related to the Trustee fee, the billing for Trustee's personal law firm and the charges associated with the accounting firm. (Lewis Decl., ¶ 6). A formal fee application and billing records for the trustee and the professionals need to be supplied in "all cases involving a 'carve-out' or 'short sale'." *In re Scoggins*, 517 B.R. 206, 227 (Bankr. E.D. Cal. 2014).

The Motion provides a short summary of the "salient terms" of the carve-out, but it raises more questions than answers:

- The Motion indicates that the carve-out amount is variable and is dependent on future actions of third-parties. (Motion 10:17-19). Are potential bidders subject to this type of variation in the overbid process?

- The Motion fails to state what is being paid from the proposed carve-out.

- The Motion states that "If the Court does not approve the sale free and clear of liens as set forth below, then MCM will still be willing to credit bid as set forth hereinabove, but it will make good faith attempts to negotiate specific payments to junior creditors as to obtain consent to the sale, but cannot guarantee a given result or be required to reach a specific resolution. In such a scenario, the carve-out to the Estate will be reduced to $55,000." Motion 1:20-23; 2:1-2. Does this mean that MCM's commitment to purchase is contingent on the outcome? Is MCM contractually obligated to purchase the Property regardless of whether the sale is approved by this court as "free and clear"? What if MCM can't secure "consent to the sale" by the junior lienholders? What other contingencies are in the carve-out agreement that have not been disclosed in the Motion?

- How does an overbid process "generate the highest and best value for the Estate"? (Motion 7:12-13). It appears that the carve-out remains the same regardless of the overbid process.

- MCM is owed in excess $3.284M on their senior lien. Does MCM receive any funds if there is an overbid? Does MCM receive only its partial credit bid or can MCM full credit bid once in the overbid process? Does the Trustee's fee change in an overbid situation?

- Can MCM increase its partial credit bid during the overbid process and thereby make a full credit bid in order to outbid other buyers?

- Why is MCM only making a partial credit bid as part of the carve-out agreement rather than a full credit bid?

- The Motion states that "the Trustee is not precluding the junior lienholders from receiving a money judgment." (Motion 15:1-4). What does this mean? Trustee is attempting to sell the property free and clear of such liens. What type of "money judgment" is Trustee referring to?

- The Motion states "If the Hawaii Property is sold subject to overbid, the junior lienholders will be provided such funds" (Motion 15:1-4). What does this mean? How, exactly are overbid funds going to be disturbed and how does this overbid process "generate the highest and best value for the Estate" if the carve-out remains unchanged?

- Why is there no marketing of this home? Why is the home not listed for sale with a professional real estate broker? Why are potential bidders only given the next few weeks to be involved in this process? Why was there no appraisal conducted on the Property?

- What are the tax implications of this carve-out which the Trustee mentions in ¶13 of his declaration?

Debtors are concurrently filing *evidentiary objections* concurrently herewith which object to Trustee's summary/characterizations of what is actually contained in the carve-out agreement (hearsay, best evidence rule, speculation). In a situation where there is a ***presumption of impropriety***, Trustee should be vastly more forthcoming. *KVN*, surpa, 514 B.R. at 5. The Motion should be denied for failure to provide full disclosure of the carve-out agreement and the information set forth above. Further, if this information is provided pursuant to Trustee's Reply to this Opposition, all interested parties should have an opportunity to review the same and to propose objections thereto.

## C. TRUSTEE FAILED TO PROVE A MEANINGFUL DISTRIBUTION TO UNSECURED CREDITORS

As stated in the official Trustee Handbook for Chapter 7 Trustees:

> ***A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case***. The trustee must be guided by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to ***make a meaningful distribution to unsecured creditors***, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.

Trustee Handbook, at 4–14 (emphasis added).

Not only has this year-long process caused a significant undue delay in the resolution of the case, but it is now clear that liquidation of the Property will primarily benefit the trustee and his professionals. A carve-out "primarily benefits the trustee and the professionals" when their fees exceed the funds that would be available to pay unsecured claims. *In re Scoggins*, 517 B.R. 206, 223 (Bankr. E.D. Cal. 2014). There is a presumption that Trustee has failed to produce a "meaningful distribution to creditors" where the trustee and professional fees are more than the amount that would remain for distribution to unsecured priority and general claims. *Id.* at 226. The trustee has the burden of proof to rebut this presumption. *Id.* Further, "[i]t might, of course, also

be the fact that, in any given case, a trustee fee that is less than the amount remaining available for unsecured claims might also 'primarily' benefit the trustee." *Id.*at 223.

Trustee does not attach the actual carve-out agreement, but, rather, generalizes in the Motion that the carve-out amount could be either $70,000 or $55,000 depending on the success of Trustee's "free and clear" arguments, the over-bid process and MCM's success in negotiating releases with junior lienholders in a yet-to-be-determined process. (Motion, 1:18-23; 2:1-2). In carefully reviewing the Motion, the only amount shown to be available for unsecured creditors is $11,877.77. (Motion 9:21-22). However, the total amount listed in the claims register is $5,423,029.46 (any secured claims listed will become unsecured if Trustee is successful in the Motion). (Motion 15:2-4). The result of the Trustee's proposed carve-out is a payment of 0.23% (less than ¼ of 1%) of the registered claims to the unsecured creditors and it is not clear if that payout is reduced if the Trustee only secures the lesser carve-out amount of $55,000 from MCM.

However, with a total potential carve-out of $70,000, and with a payment to unsecured creditors of $11,877.77, the result is that over 83% of the carve-out will be paid to other items like trustee's fees, legal fees, accounting fees and Debtors' exemption. That leaves 17% of the carve-out for the unsecured creditors. Given the calculations in the Motion, Trustee has failed to prove that unsecured creditors will receive a "meaningful distribution" as required. *Scoggins*, supra, 517 B.R. at 223; *KVN*, supra, 514 B.R. at 7; 28 U.S.C. § 586; Trustee Handbook, at 4–14.

Trustee has spent over a year and undisclosed amounts of money for legal and accounting fees all to secure a carve-out which pays 83% to costs and fees and 17% to unsecured creditors. Therefore, the carve-out proposed by the Trustee produces results that ***"primarily benefit the trustee or the professionals,"*** and has ***"unduly delay[ed] the resolution of the case***." *See* Trustee Handbook, at 4–14 (emphasis added); *Scoggins*, supra, 517 B.R. at 223; *KVN*, supra, 514 B.R. at 7; 28 U.S.C. § 586. Despite this, Trustee boldly states (without citation or authority whatsoever) that "*any return* [above $0] to the Estate and creditors will be a meaningful distribution." (Motion, 9, 23-24) (emphasis added).

It is exactly this type of result, where professional fees are run up in securing a carve-out with little benefit to the unsecured creditors, that was warned against in *KVN*:

> It is not rare that trustees of Chapter 7 estates are approached by secured creditors who seek the trustee's help to liquidate fully encumbered collateral. They realize that before the trustee is willing to go along with the proposition the secured creditor must put a little sweetener in the deal by agreeing to pay sufficient sums to compensate the trustee and to pay other costs of administration. *The more sophisticated trustee may demand that the secured creditor throw in a pittance to pay a meaningless dividend to unsecured creditors, making the arrangement more palatable to the court.*

*KVN*, supra, 514 B.R. at 7 (quoting *In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000) (emphasis added).

The court in *Scoggins* stated: "One may ask what is the harm in a disproportionate trustee or professional fee if nobody objects? The harm is the loss of public confidence in the integrity of the bankruptcy system if it comes to be regarded as managed primarily for the benefit of those who operate it." *In re Scoggins*, 517 B.R. at 221.

> [P]ermitting the trustee to appropriate the lion's share of available funds offends the U.S. trustee's 'fundamental principle' that 'a trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee.' U.S. Trustee Handbook, ch. 7 at 4–1.

*In re Scoggins*, 517 B.R. at 217-18.

The court in *Scroggins* clearly understood that 'but for' the carve-out provisions in the 4 matters before the court, the cases "would otherwise have been no-asset cases." *Id.* Therefore, Trustee's argument that "any return to the Estate and creditors will be a meaningful distribution" rings completely hollow. (Motion 9:23-24).

One of the consolidated transactions in *Scoggins* was a carve-out related to a short sale of a property for $535,000 with a carve-out of $26,750 for the estate. *Scoggins*, supra, 517 B.R. at 225. The trustee proposed a distribution of 32% ($8,572) for priority and general unsecured claims. *Id.* That amount was held to fail the meaningful distribution test. *Id.*

Another carve-out before the *Scoggins* court was a short sale for $205,000 with a carve-out of $15,000 for the estate. *Id.* The trustee proposed a distribution of 38.6% ($5,784) to the priority and general unsecured claims. *Id.* That amount was held to fail the meaningful distribution test. *Id.*

In a third transaction in *Scroggins* was the sale of parcel of land for $665,000 with a carve-out of $58,564 for the estate and a distribution of over 34% ($20,105) for unsecured claims. *Id.* That amount was held to fail the meaningful distribution test. *Id.*

In the case at hand, Trustee is proposing the sale of the Property for $2,900,000 with a carve-out of $70,000 and a distribution of 16.9% ($11,877.77) to unsecured creditors. This amount fails the meaningful distribution test and the Motion should be denied.

## IV. TRUSTEE CAUSED AN UNDUE DELAY IN THE RESOLUTION OF THIS CASE

Trustee has taken over a year to negotiate a distribution to unsecured creditors equal to 0.23% of the outstanding registered claims (all of which will become unsecured claims if the Motion is approved as is). As stated in the official Trustee Handbook for Chapter 7 Trustees: ***A trustee shall not administer an estate or an asset in an estate where [it] will … unduly delay the resolution of the case***. Trustee Handbook, at 4–14 (emphasis added). Regardless of whether the carve-out provides a meaningful distribution to creditors, Trustee's Motion should be denied because it has caused an undue delay to the resolution of the case in violation of the Trustee's duties. *Id.*

## V. TRUSTEE IS NOT ABLE TO SELL THE PROPERTY FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES IN THIS MATTER

### A. Silence is Not "Consent" Under 363(f)(2)

Trustee suggests "if no objection is made by junior lienholders by the time of the hearing on the Motion, that lack of opposition should be deemed consent to the sale of the Hawaii Property and consent to the sale free and clear of that lienholder['s] interest pursuant to 11 U.S.C. § 363(f)(2)." (Motion 11:17-21). There is absolutely no case law in the 9th Circuit supporting Trustee's proposed 'negative notice' when dealing with § 363(f)(2). Rather, consent under § 363(f)(2) requires "***unequivocal manifestation of the lienholder's affirmation.***" *In re E. Airport Dev., LLC*, 443 B.R. 823, 831 (B.A.P. 9th Cir. 2011) (emphasis added, quoting *In re Roberts,* 249 B.R. 152, 155 (Bankr. W.D.Mich. 2000).

Courts in other circuits agree: "***Section 363(f)(2) requires a consent that is expressed and not merely implied***." *In re Arch Hosp., Inc.*, 530 B.R. 588, 591 (Bankr. W.D.N.Y. 2015) (emphasis added). "The language of 11 U.S.C. § 363(f)(2) is unambiguous: unless justified under a different subdivision of section 363(f), a sale free and clear of an interest in property will require the consent of the interest holder… a failure to oppose ... differs fundamentally from an affirmation of acquiescence." *Arch Hosp., Inc.*, Supra, 530 B.R. at 591; see also, *In re Decelis,* 349 B.R. 465, 467–74 (Bankr.E.D.Va.2006) (finding that a failure to oppose a motion to sell free and clear does not equate to consent pursuant to § 363(f)(2)); *Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 534-35 (Bankr. E.D. Va. 2004) ("The failure of a secured creditor to respond to a motion to sell free and clear is not consent. In contract law, acceptance of an offer is normally not inferred from silence because there is normally no obligation to accept or even respond to an offer ... Generally, silence is not consent sufficient to permit a sale under § 363(f)(2)."); *Roberts,* supra, 249 B.R. at 152 ("Congress's juxtaposition of the word 'consents' and the phrase 'after notice and a hearing' in Section 363(c)(2) establishes beyond doubt that these are two separate and distinct concepts.").

At the time of this Opposition, there is no evidence that any lienholder has consented. (Lewis Decl., ¶ 7). To that extent, Trustee has failed to meet the requirements for the Court to authorize the sale free and clear of liens and interests pursuant to § 363(f)(2).

**B. Section 363(f)(5) is Not Applicable in the Case at Hand**

Trustee next argues that Section 363(f)(5) allows for the sale of the Property free and clear of all liens and interests (other than MCM's lien) based upon the theory that junior lienholders could be compelled in a legal or equitable proceeding to accept money satisfaction of such interests. (Motion 12:6-8; 15:1-8). Nowhere in this argument does Trustee specifically identify any such legal or equitable proceeding by which all current lienholders (including tax liens, statutory HOA liens, judgment holders and consensual liens) are exposed to losing their lien position in exchange for a "money satisfaction" as called for in § 363(f)(5). Trustee is required to specifically identify the "legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt." *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391

B.R. 25 (B.A.P. 9th Cir. 2008) (***"Clear Channel"***) (citing *In re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821, 829 (N.D. Ill. 1993)). Trustee's failure in this regard supports rejection of the use of § 363(f)(5).

Without waiving the above argument, Debtors can ascertain from the Trustee's legal citations that he means to cite the potential foreclosure action by MCM pursuant to its mortgage debt under Hawaii law. To the extent Trustee suggests that he can sell the Property free and clear of all liens and interests under § 363(f)(5) based upon a senior lender's possible foreclosure, there is no binding precedent in the 9th Circuit that supports this argument. In fact, the 9th Circuit BAP in *Clear Channel*, the seminal case (cited by Trustee) on the issue and applicability of § 363(f)(5), actually *rejected* the use of § 363(f)(5) in an amazingly similar case in which the senior lienholder who had commenced a foreclosure action prior to the bankruptcy case later joined with the bankruptcy trustee to propose a full credit bid and carve-out for the sale of the property free and clear. *Clear Channel*, supra, 391 B.R. 25.

The BAP in *Clear Channel* rejected the argument from trustee and lienholder under § 363(f)(5) and asked and answered as follows: "***does § 363(f) of the Bankruptcy Code permit a secured creditor to credit bid its debt and purchase estate property, taking title free and clear of valid, nonconsenting junior liens? We hold that it does not.***" *Id.* at 29 (emphasis added).

The facts of *Clear Channel* are strikingly similar to the case at hand. The debtor in *Clear Channel* owned a piece of real estate in Burbank, California, and the senior lienholder held a $40 million debt secured by the real estate. *Id.* at 30. Debtor went into default on the senior lienholder's debt and the senior lienholder began foreclosure in July 2006 (and also brought a receivership action in state court). *Id.* On the eve of foreclosure (November 20, 2006) debtor filed for bankruptcy. *Id.* The senior lienholder worked with the trustee to sell the real estate along with all the development rights free and clear of all liens and encumbrances using § 363(f). *Id.* The senior lienholder offered a *full* credit bid to purchase the property free and clear plus a carve-out to the trustee of $800,000. *Id.* A junior lienholder held a consensual lien on the real estate in the amount of $2.5 million. *Id.* at 31. The junior lienholder objected to the sale free and clear of its lien. *Id.* The bankruptcy court approved the free and clear sale. *Id.* The BAP disagreed and stated

that § 363(f) of the Bankruptcy Code does not permit a secured creditor to credit bid its debt and purchase estate property, taking title free and clear of valid, nonconsenting junior liens. *Id.* at 29.

One of the main issues for the BAP was whether § 363(f)(5) should be given an expansive or narrow interpretation. *Id.* at 38. An expansive reading might ask the following: Whether *any possible* legal proceeding *could be* brought which *could potentially* force a nondebtor lienholder to release its lien for an amount less than a full payoff of the debt owed. By way of example, in California a movant under § 363(f)(5) could simply point to the eminent domain procedures found in California Code of Civil Procedure § 1265.210 et seq as evidence of a potential "legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt." Under an expansive reading of § 363(f)(5), eminent domain would qualify in all real estate matters.

A further example, in any real estate matter, a movant could point to the power of the taxing authority to foreclose on its tax lien under California Revenue and Taxation Code § 3700.5 et seq., and wipe out all consensual liens on the subject real estate as support for a free and clear sale under § 363(f)(5). How about a demand for rescission under TILA pursuant to 12 CFR § 1026.23 which requires a mortgage holder to reduce its payoff and release the lien on the real estate? Does that support a movant's argument under § 363(f)(5)?

If the Trustee is proposing an expansive reading of § 363(f)(5) in the case at hand, then Trustee should attempt a sale free and clear of MCM's lien. There are a number of potential legal or equitable mechanisms which could wipe-out MCM's lien, so why limit the free and clear sale to just those liens that are subordinate to MCM? A totally free and clear sale of the Property would produce $2,900,000 for the estate. That's better than what Trustee is proposing here.

These examples and results are not serious and neither is Trustee's argument in the case at hand. The BAP in *Clear Channel* identified this conundrum of interpretation by stating:

> Paragraph (5) presents an even greater conundrum: the competing constructions seem either to render it so specialized as never to be invoked, or all-powerful, subsuming all the other paragraphs of § 363(f).

*Clear Channel, supra,* 391 B.R. at 38.

The BAP held that if the overbroad, expansive reading of § 363(f)(5) presented above were adopted "paragraph (5) would swallow and render superfluous paragraph (3), a provision directed

specifically at liens. The specific provisions of paragraph (3) would never need to be used, since all liens would be covered, regardless of any negative or positive relationship between the value of a creditor's collateral and the amount of its claim. A result that makes one of five paragraphs redundant should be avoided." *Clear Channel*, supra, 391 B.R. at 44.

To be clear, in *Clear Channel*, the BAP was fully aware of the senior lienholder's foreclosure action and had specific knowledge that the senior lienholder brought a receivership action in state court. Trustee suggestion that the BAP "didn't consider" the junior lienholder's foreclosure action or it separate receivership action in deciding that § 363(f)(5) was inappropriate in *Clear Channel* simply isn't credible. With complete knowledge of the foreclosure action and the receivership action (either of which could have resulted in wiping out the junior lienholder's lien), the BAP still adopted the narrow construction and held that § 363(f) of the Bankruptcy Code ***does not permit a secured creditor to credit bid its debt and purchase estate property, taking title free and clear of valid, nonconsenting junior liens***. *Id.* at 29.

Further, Trustee's suggestion that the BAP was simply addressing the narrow issue before it of whether a cramdown under 11 U.S.C. § 1129(b) would suffice as a "legal proceeding" under § 363(f)(5), is completely dismantled when the BAP presented specific hypotheticals of situations in which the BAP believes § 363(f)(5) would be appropriate (hint: foreclosure is not in the list…):

> Examples can be formulated that demonstrate this complementary aspect of ***a narrow view of paragraph (5)***. One might be a *buy-out arrangement* among partners, in which the controlling partnership agreement provides for a valuation procedure that yields something less than market value of the interest being bought out. … Another might be a case in which specific performance might normally be granted, but the presence of a *liquidated-damages clause* allows a court to satisfy the claim of a nonbreaching party in cash instead of a forced transfer of property. … Yet another might be *satisfaction of obligations* related to a conveyance of real estate that normally would be specifically performed but for which the parties have *agreed to a damage remedy*.

*Clear Channel, supra*, 391 B.R. at 43-44. (citations and footnotes removed, emphasis added); See also *Cal. Prac. Guide Bankruptcy Ch. 14(I)-D* (§ 363(f)(5) typically limited to: buy-out agreements among partners, liquidated damages, or agreed damages in lieu of performance); See

also *In re Canonigo,* 276 B.R. 257, 264-266 (Bankr. N.D. Cal. 2002) (§ 363(f)(5) applies only to third party interests *other than* liens).

Again, the BAP absolutely knew that the senior lienholder had the right to foreclose under state law and had, in fact, commenced said foreclosure prior to the bankruptcy filing. The BAP didn't include foreclosure in the list of hypothetic scenarios where § 363(f)(5) applies because they applied a narrow construction of Section (5):

> Put another way, any interpretation of paragraph (5) must satisfy the requirement that the various paragraphs of subsection (f) work harmoniously and with little overlap. The bankruptcy court's broad interpretation does not do this.

*Clear* Channel, supra, 391 B.R. at 44.

Again, (to specifically belabor the point…), in a case dealing with a real property foreclosure and a receivership action, the BAP did not list "foreclosure" or "a state receivership action" in their list of "examples" of their "complementary aspect of a narrow view of paragraph (5)." *Id.*

The BAP acknowledges that it's holding "leads to a relatively small role for paragraph (5)" but that they "are not effectively writing it out of the Code. Paragraph (5) remains one of five different justifications for selling free and clear of interests, and its scope need not be expansive or all-encompassing. So long as its breadth complements the other four paragraphs consistent with congressional intent, without overlap, our narrow view is justified." *Clear Channel*, supra, 391 B.R. at 43.

In the case at hand, the Trustee's argument utilizing a potential state foreclosure action as a basis to employ § 363(f)(5) would lead to a vastly expanded and expansive reading of § 363(f)(5) which would overtake, and render useless, § 363(f)(3). Therefore, the application of § 363(f)(5) to the case at hand is not appropriate.

**C. <u>MCM Does Not have the Right to Foreclose on the Property</u>**

If this Court determines that a foreclosure under applicable state law is a "legal mechanism" which supports use of § 363(f)(5) in the case at hand, then Trustee must prove that the Property in

question is actually subject to a valid foreclosure by MCM under Hawaii Law. Trustee cannot show this because MCM is not capable of foreclosing under Hawaii state foreclosure laws. (Lewis Decl., ¶ 8). MCM's predecessor in interest was unable to foreclose under state law and, after purchasing this debt, MCM was also not able to conclude a foreclosure under state law. (Lewis Decl., ¶ 9). MCM contacted Trustee in an effort to devise a means to acquire ownership of the home other than foreclosure. (Lewis Decl., ¶ 10). Not only is Trustee unable to show that foreclosure under state law is available (and thereby could act as support for his § 363(f)(5) request), but it's simply not proper for the Trustee to act as the liquidating agent for MCM in a situation where the lienholder is having difficulty in liquidating its own lien. *KVN Corp., Inc.*, supra, 514 B.R. at 5 (citing *In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000)) ("Clearly, the Code never contemplated that a Chapter 7 trustee should act as a liquidating agent for secured creditors who should liquidate their own collateral."). Here, Trustee cannot show a valid legal process under state law which would allow the senior lienholder to proceed with foreclosure. Therefore, use of § 363(f)(5) is not appropriate in the case at hand.

### D. <u>Failure to Properly Serve All Creditors</u>

Even if this Court agrees that either § 363(f)(2) or § 363(f)(5) is applicable here, service must be proper for either to be effective. As indicated hereinabove, Trustee failed to properly serve a number of secured creditors pursuant to Rule 7004. Therefore, this Court should reject the Motion to sell the Property free and clear of liens.

## VI. <u>DEBTORS' EXEMPTION MUST BE PAID</u>

Again, Trustee does not attach the carve-out agreement or provide any information on the allocation of the potential distribution to creditors. Therefore, it is impossible to determine how much the Trustee and his personal law firm will be making as part of this transaction or how much is available for distribution. Nevertheless, Debtor hereby demands that Debtors' claimed exemption be paid from any proceeds resulting from the proposed sale and carve-out related to the Property. There were no objections to the claimed exemption by Debtor with respect to the

Property. Debtors are entitled to payment of their claimed exemption in the situation at hand if this Court approves the sale. *In re Wilson*, 494 B.R. 502, 506 (Bankr. C.D. Cal. 2013) ("It does not matter how funds are generated by the estate through a Section 363 sale, including if derived from a 'tip' from [the lenders] so that they will not have to undertake a foreclosure proceeding under [state] law. Funds derived from these sales are property of the estate and are subject to valid exemptions."). In *Wilson*, the trustee specifically argued that the exemption does not attach to the "carve-out proceeds" but the court rejected that argument entirely. *Id.* as 505-06 ("The 'carve-outs' from the Properties are the means by which the estate is acquiring funds that are subject to the exemptions.") (the court rejected as irrelevant the trustee's arguments based upon *In re Hyman,* 967 F.2d 1316 (9th Cir. 1992) and *Owen v. Owen,* 500 U.S. 305, 306, 111 S.Ct. 1833, 1834, 114 L.Ed.2d 350 (1991).)

In *Wilson,* the court concluded that a carve-out functions as a "tip" to the estate to avoid foreclosure proceedings, but the "tip" constitutes proceeds of the Trustee's § 363 sale, subject to validly claimed interests such as liens and exemptions. *Wilson,* supra, 494 B.R. at 505–06. The court reasoned that, by agreeing to a carve-out, the lienholders simply agreed to a lesser payoff, allowing the estate to collect remaining proceeds from the sale. *Id.* The debtor's exemption takes priority over the estate's interest in the property and must be paid from proceeds of the sale before the estate may collect proceeds for distributions to creditors. *Id.*

## **VII. <u>CONCLUSION</u>**

Trustee has failed to overcome the presumption of impropriety with respect to the proposed carve-out. Trustee is proposing to sell the Property without marketing and without the assistance of a professional in the local marketplace. Trustee failed to fully disclose the terms of the carve-out to the Court and the creditors. The Motion was not served properly on all creditors. The carve-out does not produce a meaningful distribution to creditors and the year-long process has produced an undue delay in the resolution of the case. For these reasons, and for the reasons more fully set forth in this Opposition, Debtors respectfully request this Court to deny Trustee's Motion.

DATED: July 7, 2016

Respectfully submitted,
**VANTIS LAW FIRM, P.C.**

By: ______________________
Derik N. Lewis
Attorney for Debtors
MATTHEW JASON WHITMAN
CARLA MARIA WHITMAN

19

DEBTOR'S OPPOSITION TO TRUSTEE'S MOTION TO SELL

**DECLARATION OF DERIK N. LEWIS**

I, Derik N. Lewis, declare as follows:

1. I am counsel of record for DEBTORS in the above entitled action. I have personal knowledge of the facts set forth herein and if called as a witness could and would competently testify as to those facts. This Declaration is submitted in support of Debtors' Opposition to CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) APPROVING OVERBID PROCEDURES; AND (3) APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASERS PURSUANT TO 11 U.S.C. § 363(m); DECLARATION IN SUPPORT THEREOF

2. I've reviewed all the filings in this case along with all the items contained in the docket of the case. Additionally, I've propounded discovery upon Trustee which has gone unanswered through the date upon which discovery responses were due. I've questioned my client about relevant matters associated with this case and the Property in question. From all of the information and all of my investigations, I believe and understand as follows:

- Trustee took no action to exercise dominion over the Property, failed to physically secure the Residence, and failed to "*obtain control over the property, including changing the locks.*"
- Trustee failed to conduct an inspection of the Property, never asked for keys from Debtors, never demanded possession from Debtors, and did not take an inventory of the Property or any assets therein.
- Trustee failed to conduct a valuation of the Property.
- Trustee failed to "immediately take all other steps … to preserve the assets."
- Prior to filing his Report of No Distribution, Trustee failed to confirm the "amount, validity and perfection of purported security interests against such property."
- Trustee did not insure the Property or "immediately notify secured lien holders" so they could insure the property and protect the asset.

- Trustee failed to make a determination whether the Property was a valuable asset such that a sale would generate a meaningful distribution to unsecured creditors and instead Trustee filed his Report of No Distribution.
- Prior to filing his Report of No Distribution, Trustee failed to "immediately abandon the asset and contact the secured creditor immediately so it can protect its own interest in the property."
- Having filed his Report of No Distribution and knowing that the Property was "fully encumbered," Trustee failed to "immediately abandon" the over-encumbered Property as required. That failure has led to a delay in the resolution of the case by more than a year.

3. Debtors filed this bankruptcy case action in April 2015 and the case has remained open based upon Trustee's ongoing discussions with MCM regarding the proposed carve-out agreement.

4. Trustee year-long discussions with MCM have caused an undue delay which has harmed Debtors by exposing them to ongoing, non-dischargeable, post-petition homeowner association dues, fees and fines related to Debtors' name remaining on title to the Hawaii Property. On July 6, 2016, I personally contacted Susan Ellingwood, Senior Accountant to Destination Maui, Inc, the managing agent for The Pinnacle at Kaanapali and Kaanapali Golf Estates CA, Inc. (the two homeowner associations which the Property is subject to). Ms. Ellingwood delivered the most current billing statements for the two association. True and correct copies of the billings statements received are attached hereto as **Exhibit A**. The billing statements show that, from and after the meeting of creditors, the non-dischargeable homeowner association dues have grown by $19,016.08.

5. I have personally asked Trustee for a copy of the copy of the carve-out agreement many times in the last 6 months (from an after the prior Motion to Compel Abandonment of the Hawaii Property) and I have never received a copy.

6. Despite repeated requests, Trustee has not provided any information related to the Trustee fee, the billing for Trustee's personal law firm and the charges associated with the accounting firm.

7. I have reviewed the Docket for this case and, at the time of this Opposition, there is no evidence that any lienholder has consented to Trustee's request to sell the Property free and clear of all liens and interests.

8. I have researched the prior foreclosure action on the Hawaii Property and it is clear that MCM is not capable of completing its current judicial foreclosing action under Hawaii state foreclosure laws.

9. MCM's predecessor in interest was unable to foreclose under state law and, after purchasing this debt, MCM was also not able to conclude a foreclosure under state law.

10. It is my understanding that MCM contacted Trustee in an effort to devise a means to acquire ownership of the home other than foreclosure.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: July 7, 2106

DERIK N. LEWIS

**EXHIBIT A**

23

DEBTOR'S OPPOSITION TO TRUSTEE'S MOTION TO SELL

## The Pinnacle at Kaanapali

Destination Maui, Inc.
220 Imi Kala Street Ste 104
Wailuku, HI 96793

MATTHEW & CARLA WHITMAN
3419 Via Lido #123
Newport Beach, CA 92663

**Property** 36 E. MAHI PUA PL P1-11
**Account #:** 24299

| Code | Date | Amount | Maint | Late Fee | 1.50% Interest | Atty fees | Balance |
|---|---|---|---|---|---|---|---|
| Balance Brought Forward | 9/30/2014 | 21,757.22 | 12,360.00 | 2,170.00 | 6,886.80 | 340.42 | 21,757.22 |
| Maintenance | 10/1/2014 | 500.00 | 500.00 | | | | 22,257.22 |
| Maintenance | 1/1/2015 | 500.00 | 500.00 | | | | 22,757.22 |
| Late Fee | 1/26/2015 | 35.00 | | 35.00 | | | 22,792.22 |
| Interest | 1/26/2015 | 200.4 | | | 200.40 | | 22,992.62 |
| Late Fee | 2/26/2015 | 35.00 | | 35.00 | | | 23,027.62 |
| Interest | 2/26/2015 | 200.4 | | | 200.40 | | 23,228.02 |
| Late Fee | 3/26/2015 | 35.00 | | 35.00 | | | 23,263.02 |
| Interest | 3/26/2015 | 200.4 | | | 200.40 | | 23,463.42 |
| Maintenance | 4/1/2015 | 500.00 | 500.00 | | | | 23,963.42 |
| Late Fee | 4/25/2015 | 35.00 | | 35.00 | | | 23,998.42 |
| Interest | 4/25/2015 | 207.90 | | | 207.90 | | 24,206.32 |
| Late Fee | 5/25/2015 | 35.00 | | 35.00 | | | 24,241.32 |
| Interest | 5/25/2015 | 207.90 | | | 207.90 | | 24,449.22 |
| Late Fee | 6/25/2015 | 35.00 | | 35.00 | | | 24,484.22 |
| Interest | 6/25/2015 | 207.90 | | | 207.90 | | 24,692.12 |
| Maintenance | 7/1/2015 | 500.00 | 500.00 | | | | 25,192.12 |
| Late Fee | 7/27/2015 | 35.00 | | 35.00 | | | 25,227.12 |
| Interest | 7/27/2015 | 215.4 | | | 215.40 | | 25,442.52 |
| Late Fee | 8/25/2015 | 35.00 | | 35.00 | | | 25,477.52 |
| Interest | 8/25/2015 | 215.40 | | | 215.40 | | 25,692.92 |
| Late Fee | 9/25/2015 | 35.00 | | 35.00 | | | 25,727.92 |
| Interest | 9/25/2015 | 215.40 | | | 215.40 | | 25,943.32 |
| Maintenance | 10/1/2015 | 500.00 | 500.00 | | | | 26,443.32 |
| Late Fee | 10/25/2015 | 35.00 | | 35.00 | | | 26,478.32 |
| Interest | 10/25/2015 | 222.90 | | | 222.90 | | 26,701.22 |
| Late Fee | 11/25/2015 | 35.00 | | 35.00 | | | 26,736.22 |
| Interest | 11/25/2015 | 222.90 | | | 222.90 | | 26,959.12 |
| Late Fee | 12/25/2015 | 35.00 | | 35.00 | | | 26,994.12 |
| Interest | 12/25/2015 | 222.90 | | | 222.90 | | 27,217.02 |
| Maintenance | 1/1/2016 | 500.00 | 500.00 | | | | 27,717.02 |
| Late Fee | 1/25/2016 | 35.00 | | 35.00 | | | 27,752.02 |
| Interest | 1/25/2016 | 230.40 | | | 230.40 | | 27,982.42 |
| Late Fee | 2/25/2016 | 35.00 | | 35.00 | | | 28,017.42 |
| Interest | 2/25/2016 | 230.40 | | | 230.40 | | 28,247.82 |
| Late Fee | 3/25/2016 | 35.00 | | 35.00 | | | 28,282.82 |
| Interest | 3/25/2016 | 230.40 | | | 230.40 | | 28,513.22 |
| Maintenance | 4/1/2016 | 500.00 | 500.00 | | | | 29,013.22 |
| Late Fee | 4/25/2016 | 35.00 | | 35.00 | | | 29,048.22 |

**Property** 36 E. MAHI PUA PL P1-11
**Account #:** 24299

| Code | Date | Amount | Maint | Late Fee | 1.50% Interest | Atty fees | Balance |
|---|---|---|---|---|---|---|---|
| Interest | 4/25/2016 | 237.90 | | | 237.90 | | 29,286.12 |
| Late Fee | 5/25/2016 | 35.00 | | 35.00 | | | 29,321.12 |
| Interest | 5/29/2016 | 237.90 | | | 237.90 | | 29,559.02 |
| Late Fee | 6/25/2016 | 35.00 | | 35.00 | | | 29,594.02 |
| Interest | 6/29/2016 | 237.90 | | | 237.90 | | 29,831.92 |
| Maintenance | 7/1/2016 | 500.00 | 500.00 | | | | 30,331.92 |
| **Totals** | | | **16,360.00** | **2,800.00** | **10,831.50** | **340.42** | **30,331.92** |

Destination Maui, Inc. | 220 Imi Kala Street Ste 104 | Wailuku, HI 96793 | (808)244-9021
**Make check payable to: The Pinnacle at Kaanapali**

Kaanapali Golf Estates CA, Inc.
Destination Maui, Inc.
220 Imi Kala Street Ste 104
Wailuku, HI 96793

MATTHEW & CARLA WHITMAN
3419 Via Lido #123
New Port Beach, CA 92663

**Property** 36 E. MAHI PUA PL P19&20-11
**Account #:** 24130

| Code | Date | Amount | Maint | Late Fee | Interest | Landscape | Atty fees | Balance |
|---|---|---|---|---|---|---|---|---|
| Balance Brought Forward | 12/30/2010 | 15,991.31 | 15,991.31 | | | | | 15,991.31 |
| Late Fee | 12/31/2010 | 74.25 | | 74.25 | | | | 16,065.56 |
| Maintenance | 1/1/2011 | 495.00 | 495.00 | | | | | 16,560.56 |
| Landscape | 1/10/2011 | 270.82 | | | | 270.82 | | 16,831.38 |
| Late Fee | 1/18/2011 | 35.00 | | 35.00 | | | | 16,866.38 |
| Late Fee | 1/31/2011 | 81.68 | | 81.68 | | | | 16,948.06 |
| Late Fee | 2/28/2011 | 81.68 | | 81.68 | | | | 17,029.74 |
| Maintenance | 4/1/2011 | 495.00 | 495.00 | | | | | 17,524.74 |
| Interest | 4/1/2011 | 240.12 | | | 240.12 | | | 17,764.86 |
| Late Fee | 4/15/2011 | 35.00 | | 35.00 | | | | 17,799.86 |
| Interest | 4/30/2011 | 247.54 | | | 247.54 | | | 18,047.40 |
| Maintenance | 7/1/2011 | 495.00 | 495.00 | | | | | 18,542.40 |
| Late Fee | 7/15/2011 | 35.00 | | 35.00 | | | | 18,577.40 |
| Interest | 7/31/2011 | 254.97 | | | 254.97 | | | 18,832.37 |
| Maintenance | 10/1/2011 | 495.00 | 495.00 | | | | | 19,327.37 |
| Late Fee | 10/17/2011 | 35.00 | | 35.00 | | | | 19,362.37 |
| Interest | 10/31/2011 | 262.39 | | | 262.39 | | | 19,624.76 |
| Maintenance | 1/1/2012 | 495.00 | 495.00 | | | | | 20,119.76 |
| Late Fee | 1/17/2012 | 35.00 | | 35.00 | | | | 20,154.76 |
| Interest | 1/31/2012 | 269.82 | | | 269.82 | | | 20,424.58 |
| Maintenance | 4/1/2012 | 495.00 | 495.00 | | | | | 20,919.58 |
| Late Fee | 4/17/2012 | 35.00 | | 35.00 | | | | 20,954.58 |
| Interest | 4/30/2012 | 277.24 | | | 277.24 | | | 21,231.82 |
| Maintenance | 7/1/2012 | 495.00 | 495.00 | | | | | 21,726.82 |
| Late Fee | 7/16/2012 | 35.00 | | 35.00 | | | | 21,761.82 |
| Interest | 7/31/2012 | 284.67 | | | 284.67 | | | 22,046.49 |
| Maintenance | 10/1/2012 | 495.00 | 495.00 | | | | | 22,541.49 |
| Late Fee | 10/15/2012 | 35.00 | | 35.00 | | | | 22,576.49 |
| Interest | 10/31/2012 | 292.09 | | | 292.09 | | | 22,868.58 |
| Maintenance | 1/1/2013 | 495.00 | 495.00 | | | | | 23,363.58 |
| Late Fee | 1/15/2013 | 35.00 | | 35.00 | | | | 23,398.58 |
| Interest | 1/31/2013 | 350.98 | | | 350.98 | | | 23,749.56 |
| Legal Fee | 3/18/2013 | 182.29 | | | | | 182.29 | 23,931.85 |
| Maintenance | 4/1/2013 | 495.00 | 495.00 | | | | | 24,426.85 |
| Late Fee | 4/15/2013 | 35.00 | | 35.00 | | | | 24,461.85 |
| Interest | 4/30/2013 | 366.93 | | | 366.93 | | | 24,828.78 |
| Legal Fee | 5/23/2013 | 234.37 | | | | | 234.37 | 25,063.15 |
| Maintenance | 7/1/2013 | 495.00 | 495.00 | | | | | 25,558.15 |
| Late Fee | 7/15/2013 | 35.00 | | 35.00 | | | | 25,593.15 |
| Interest | 7/31/2013 | 383.90 | | | 383.90 | | | 25,977.05 |
| Legal Fee | 8/5/2013 | 500.46 | | | | | 500.46 | 26,477.51 |
| Interest | 9/30/2013 | 397.16 | | | 397.16 | | | 26,874.67 |
| Maintenance | 10/1/2013 | 495.00 | 495.00 | | | | | 27,369.67 |
| Late Fee | 10/15/2013 | 35.00 | | 35.00 | | | | 27,404.67 |
| Interest | 10/31/2013 | 411.07 | | | 411.07 | | | 27,815.74 |
| Interest | 11/30/2013 | 417.24 | | | 417.24 | | | 28,232.98 |
| Interest | 12/31/2013 | 423.49 | | | 423.49 | | | 28,656.47 |
| Maintenance | 1/1/2014 | 495.00 | 495.00 | | | | | 29,151.47 |
| Late Fee | 1/15/2014 | 35.00 | | 35.00 | | | | 29,186.47 |
| Interest | 1/31/2014 | 437.80 | | | 437.80 | | | 29,624.27 |
| Legal Fee | 2/20/2014 | 93.75 | | | | | 93.75 | 29,718.02 |
| Interest | 2/28/2014 | 445.77 | | | 445.77 | | | 30,163.79 |
| Interest | 3/31/2014 | 452.46 | | | 452.46 | | | 30,616.25 |
| Maintenance | 4/1/2014 | 495.00 | 495.00 | | | | | 31,111.25 |
| Late Fee | 4/15/2014 | 35.00 | | 35.00 | | | | 31,146.25 |
| Interest | 4/30/2014 | 467.19 | | | 467.19 | | | 31,613.44 |
| Interest | 5/31/2014 | 474.20 | | | 474.20 | | | 32,087.64 |
| Interest | 6/30/2014 | 481.31 | | | 481.31 | | | 32,568.95 |

**Property** 36 E. MAHI PUA PL P19&20-11
**Account #:** 24130

| Code | Date | Amount | Maint | Late Fee | Interest | Landscape | Atty fees | Balance |
|---|---|---|---|---|---|---|---|---|
| Maintenance | 7/1/2014 | 495.00 | 495.00 | | | | | 33,063.95 |
| Late Fee | 7/15/2014 | 35.00 | | 35.00 | | | | 33,098.95 |
| Legal Fee | 7/24/2014 | 250.00 | | | | | 250.00 | 33,348.95 |
| Interest | 9/1/2014 | 164.05 | | | 164.05 | | | 33,513.00 |
| Maintenance | 10/1/2014 | 495.00 | 495.00 | | | | | 34,008.00 |
| Maintenance | 1/1/2015 | 495.00 | 495.00 | | | | | 34,503.00 |
| Late Fee | 2/15/2015 | 35.00 | | 35.00 | | | | 34,538.00 |
| Interest | 2/28/2015 | 401.03 | | | 401.03 | | | 34,939.03 |
| Legal Fee | 3/1/2015 | 250.00 | | | | | 250.00 | 35,189.03 |
| Late Fee | 3/15/2015 | 35.00 | | 35.00 | | | | 35,224.03 |
| Interest | 3/31/2015 | 405.31 | | | 405.31 | | | 35,629.34 |
| Maintenance | 4/1/2015 | 495.00 | 495.00 | | | | | 36,124.34 |
| Late Fee | 4/15/2015 | 35.00 | | 35.00 | | | | 36,159.34 |
| Interest | 4/30/2015 | 413.26 | | | 413.26 | | | 36,572.60 |
| Late Fee | 5/15/2015 | 35.00 | | 35.00 | | | | 36,607.60 |
| Interest | 5/31/2015 | 413.78 | | | 413.78 | | | 37,021.38 |
| Late Fee | 6/15/2015 | 35.00 | | 35.00 | | | | 37,056.38 |
| Interest | 6/30/2015 | 414.31 | | | 414.31 | | | 37,470.69 |
| Maintenance | 7/1/2015 | 495.00 | 495.00 | | | | | 37,965.69 |
| Late Fee | 7/15/2015 | 35.00 | | 35.00 | | | | 38,000.69 |
| Interest | 7/31/2015 | 422.26 | | | 422.26 | | | 38,422.95 |
| Late Fee | 8/15/2015 | 35.00 | | 35.00 | | | | 38,457.95 |
| Interest | 8/31/2015 | 422.78 | | | 422.78 | | | 38,880.73 |
| Late Fee | 9/15/2015 | 35.00 | | 35.00 | | | | 38,915.73 |
| Interest | 9/30/2015 | 423.31 | | | 423.31 | | | 39,339.04 |
| Maintenance | 10/1/2015 | 495.00 | 495.00 | | | | | 39,834.04 |
| Late Fee | 10/15/2015 | 35.00 | | 35.00 | | | | 39,869.04 |
| Interest | 10/31/2015 | 431.26 | | | 431.26 | | | 40,300.30 |
| Late Fee | 11/15/2015 | 35.00 | | 35.00 | | | | 40,335.30 |
| Interest | 11/30/2015 | 431.78 | | | 431.78 | | | 40,767.08 |
| Legal Fee | 12/14/2015 | 125.00 | | | | | 125.00 | 40,892.08 |
| Late Fee | 12/15/2015 | 35.00 | | 35.00 | | | | 40,927.08 |
| Interest | 12/31/2015 | 432.31 | | | 432.31 | | | 41,359.39 |
| Maintenance | 1/1/2016 | 495.00 | 495.00 | | | | | 41,854.39 |
| Late Fee | 1/15/2016 | 35.00 | | 35.00 | | | | 41,889.39 |
| Interest | 1/31/2016 | 442.13 | | | 442.13 | | | 42,331.52 |
| Late Fee | 2/15/2016 | 35.00 | | 35.00 | | | | 42,366.52 |
| Interest | 2/29/2016 | 442.66 | | | 442.66 | | | 42,809.18 |
| Late Fee | 3/15/2016 | 35.00 | | 35.00 | | | | 42,844.18 |
| Interest | 3/31/2016 | 443.18 | | | 443.18 | | | 43,287.36 |
| Maintenance | 4/1/2016 | 495.00 | 495.00 | | | | | 43,782.36 |
| Late Fee | 4/15/2016 | 35.00 | | 35.00 | | | | 43,817.36 |
| Interest | 4/30/2016 | 451.13 | | | 451.13 | | | 44,268.49 |
| Late Fee | 5/15/2016 | 35.00 | | 35.00 | | | | 44,303.49 |
| Interest | 5/31/2016 | 451.66 | | | 451.66 | | | 44,755.15 |
| Late Fee | 6/15/2016 | 35.00 | | 35.00 | | | | 44,790.15 |
| Interest | 6/30/2016 | 452.18 | | | 452.18 | | | 45,242.33 |
| Maintenance | 7/1/2016 | 495.00 | 495.00 | | | | | 45,737.33 |
| **Totals** | | | 27,376.31 | 1,357.61 | 16,096.72 | 270.82 | 1,636.87 | 45,737.33 |

Destination Maui, Inc. | 220 Imi Kala Street Ste 104 | Wailuku, HI 96793 | (808)244-9021
**Make check payable to: Kaanapali Golf Estates CA, Inc.**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**120 Vantis Drive, Suite 300, Aliso Viejo, CA 92656**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS' OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) APPROVING OVERBID PROCEDURES; AND (3) APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASERS PURSUANT TO 11 U.S.C. § 363(m); DECLARATION IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **JULY 7, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **JULY 7, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **JULY 7, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 7, 2016 | Eva J. Sieg | /s/ Eva J. Sieg |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION**:


**Electronic Mail Notice List**
Caren J Castle wdk@wolffirm.com, wdk@wolffirm.com
Marian Garza ecfnotices@ascensioncapitalgroup.com
Beth Gaschen bgaschen@wgllp.com, kadele@wgllp.com; lfisk@wgllp.com; tziemann@wgllp.com
Jeffrey I Golden (TR) ljones@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com; lfisk@wgllp.com
Christopher J Green cgreen@lwgfllp.com, chrisgreen@ucla.edu; kadele@lwgfllp.com; lfisk@lwgfllp.com;
christophergreen-2815@ecf.pacerpro.com
Leslie M Klott bankruptcy@zievelaw.com
Derik N Lewis dlewis@vantislaw.com, esieg@vantislaw.com
Christina J O christinao@mclaw.org, erica@mclaw.org
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov


**VIA OVERNIGHT MAIL**
The Honorable Erithe A. Smith
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

**DEBTOR**
Matthew Jason Whitman
Carla Maria Whitman
3419 Via Lido #123
Newport Beach, CA 92663

**CREDITOR BY CERTIFIED MAIL**
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

**CREDITOR (IRS) BY CERTIFIED MAIL TO CIVIL
PROCESS CLERK**
Civil Process Clerk
United States Attorney's Office
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012

**CREDITOR BY CERTIFIED MAIL TO AN OFFICER**
American Express Bank
c/o American Express Company
200 Vesey Street
New York, New York 10285
Attention: Kenneth I. Chenault, CEO

**CREDITOR VIA CERTIFIED MAIL TO AN OFFICER**
E*Trade Bank
671 North Glebe Road, 10th Floor
Arlington, VA 22203
Attention Paul Thomas Idzik, CEO

**CREDITOR BY CERTIFIED MAIL TO AN OFFICER**
Bank of America, NA
100 North Tryon Street
Charlotte, NC 28255-0001
Attention: Bryan T. Moynihan, CEO

**CREDITOR BY US MAIL TO AN OFFICER**
Bridle Creek Homeowners Association
2900 Adams St Suite C-200
Riverside, CA 92504
Attention: Denise Walker, President

**CREDITOR BY US MAIL TO AN OFFICER**
Lido Isle Community Association
701 Via Lido Soud
Newport Beach, CA 92663
Attention: Fred J. Barnes, President

**CREDITOR BY US MAIL**
Ronald S. Caswell
1625 Warnall Ave.
Los Angeles CA 90024

**CREDITOR BY US MAIL TO AN OFFICER**
Skyline Pools of Hawaii, Inc.
154 Kupuohi St Ste E6
Lahaina, HI 96761
Attention William Hoy, President

**CREDITOR BY US MAIL TO AN OFFICER**
Skyline Pools of Hawaii, Inc.
426 WILLOW RD
MENLO PARK, California 94025
Attention William Hoy, President

**CREDITOR (IRS) BY US MAIL TO THE ATTORNEY
GENERAL OF THE UNITED STATES**
Office of the Attorney General of the United States
United States Department of Justice
Ben Franklin Station
P. O. Box 683
Washington, DC 20044

**CREDITOR VIA US MAIL**
County of Maui Department of Finance
Real Property Tax Division
70 East Kaahumanu Ave A16
Kahului, HI 96732

**CREDITOR VIA US MAIL**
County of Maui Dept Environmental Mgt
2200 Main Streets, Suite 100
Wailuku, HI 96793

**CREDITOR VIA US MAIL**
County of Maui Tax Collector
70 E. Kaahumanu Av #A16
Kahului, HI 96732-2196

**CREDITOR VIA US MAIL TO AN OFFICER OR
MANAGING AGENT**
Kaanapali Golf Estates Community Association, Inc.
Attn: Officer, Director or Manager
c/o Destination Maui Inc., Agent
220 Imi Kala St Ste 104
Wailuku, HI 96793

**CREDITOR VIA US MAIL TO AN OFFICER OR
MANAGING AGENT**
Kaanapali Golf Estates Community Association, Inc.
Attn: Officer, Director or Manager
c/o Destination Maui Inc., Agent
220 Imi Kala St Ste 104
Wailuku, HI 96793

**CREDITOR VIA US MAIL TO AN OFFICER OR
MANAGING AGENT**
The Pinnacle at Kaanapali Subd
36 East Mahi Pua Place
Lahaina, HI 96761
Attention:  President, CEO or Managing Agent

**CREDITOR VIA US MAIL TO AN OFFICER OR
MANAGING AGENT**
Ventures Trust 2013-I-H-R
by MCM Capital Partners, its Trustee
Attn: Officer, Director or Manager
7500 Old Georgetown Rd.
Bethesda, MD 20814